Roger BULL, et al.

v.

AMERICAN BANK AND TRUST CO.
OF PA., et al.

James O'DONNELL, et al.

v.

AMERICAN BANK AND TRUST CO.
OF PA., et al.

Jack A. GOMBERG, M.D.

v.

AMERICAN BANK AND TRUST CO.
OF PA., et al.

Andrew DERMOND, et al.

v.

DAIRY CATTLE MANAGEMENT
CORPORATION, et al.

Joseph MARIANO, et al.

v.

AMERICAN BANK AND TRUST CO.
OF PA., et al.

Anthony FAZIO

v.

DAIRY CATTLE MANAGEMENT
CORPORATION, et al.

Charles CHAPAS, et al.

v.

AMERICAN BANK AND TRUST CO.
OF PA., et al.

Robert BLOOM, et al.

v.

AMERICAN BANK AND TRUST CO.
OF PA., et al.

Civ. A. Nos. 84–4056, 84–4196 to 84–4199,
84–4465, 84–4466 and 84–4611.

United States District Court,
E.D. Pennsylvania.

Jan. 13, 1986.

Richard G. Phillips, Richard G. Phillips Associates, Philadelphia, Pa., for plaintiffs.

Joel Burcat, Harrisburg, Pa., for Em-Tran, Inc.

Curtis P. Cheyney, Philadelphia, Pa., for Swartz, Campbell & Detweiler.

William E. Master, Merkel & Spang, Reading, Pa., for Eugene Richard.

Brian E. Appel, Hoyle, Morris & Kerr, Philadelphia, Pa., for David Paul, Inc. and d/b/a David Paul Associates.

Joan R. Sheak, Klehr, Harrison, Harvey, Branzburg, Ellers & Weir, Jack M. Seitz, Allentown, Pa., for American Bank and Trust Co.

M. Kelly Tillery, Philadelphia, Pa., for John Nisbet.

Thomas C. Zielinski, Philadelphia, Pa., for Morris J. Cohen & Co.

Curtis P. Cheyney, III, Swartz, Campbell & Detweiler, James R. Kahn, Matthew J. Siembieda, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Thomas Ledbetter, Ledbetter and Yogel Associates, Lawrence Yogel.

Stanley J. Sinowitz, Philadelphia, Pa., and A. Patricia Diulus, Arthur J. Murphy Jr. & Assoc. P.C., Pittsburgh, Pa., for Sol Sardinsky, Sol Sardinsky & Company.

## OPINION

CAHN, District Judge.

Plaintiffs have sued defendants for damages resulting from the alleged violation of federal and state securities laws and state common law. Before me are defendants' motions to dismiss. For the reasons set forth below, the motions to dismiss will be granted in part.

## FACTS

These actions arise out of plaintiffs' participation in the Star Bright Holsteins (SBH) program, an investment plan involving the purchase, breeding, and maintenance of herds of Holstein cattle for the accounts of investors seeking tax shelters. For purposes of deciding defendants' motion to dismiss, plaintiffs' factual allegations will be taken as true. *Conley v. Gibson*, 355 U.S. 41, 45-6, 78 S.Ct. 99, 101-2, 2 L.Ed.2d 80 (1957).

According to the SBH prospectus that was attached as an exhibit to several of the complaints, defendants Thomas Ledbetter, David Paul, Sol Sardinsky, and Larry Yogel were the four principals in the Dairy Cattle Management Corporation ("DCMC"). DCMC was organized to purchase cattle, sell fractional shares of the herds to investors, and enter into contracts with investors for maintenance of the herds. Paul was responsible for actually maintaining the herd on his farm in Bath, Pennsylvania, and for managing the breeding program. Sardinsky was the accountant for the enterprise and Ledbetter and Yogel its lawyers. Sardinsky, Ledbetter, and Yogel also provided general management and monitoring services.

Plaintiffs claim that, between 1979 and 1981, they acted on the advice of these and other defendants and agreed to purchase

shares in the herds of Holstein cattle. As part of the plan, they also entered into maintenance contracts with either DCMC or David Paul which provided for the care and breeding of the animals.[1] In some cases, these contracts were later assigned to the Walebe Land and Cattle Management Company, Inc. ("Walebe").

Plaintiffs claim that defendants induced them to enter into these transactions by using prospectuses and making other representations that were fraudulent and misleading. Plaintiffs allege, for example, that the prospectuses misrepresented the fair market value of the cattle, the revenues that could be expected from breeding, and, generally, the profit-making potential of the enterprise. They also allege that defendants engaged in a course of conduct to conceal the fraud they had perpetrated by sending plaintiffs untrue and misleading reports on their investments. Plaintiffs seek compensation for losses allegedly suffered as a result of defendants' actions under §§ 12(1) and 12(2) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77$l$(1), (2) (1983), §§ 10(b) and 15(a)(1) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78j(b) and 78o(a)(1) (1983), §§ 501, and 502 of the Pennsylvania Securities Act of 1972 ("the Pennsylvania Securities Act"), Pa.Stat.Ann. tit. 70, §§ 1–501, and 1–502 (Purdon Supp.1985), and the common law of agency, negligence, malpractice, contracts, fraud, and deceit.

### Claims Under §§ 12(1) and 12(2) of the Securities Act

■ Defendants argue that claims brought under §§ 12(1) and 12(2) of the Securities Act are barred by the statute of limitations and should be dismissed. The limitations period applicable to these claims is set forth in 15 U.S.C. § 77m (1983):

No action shall be maintained to enforce any liability created under section [11 or 12(2)] of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section [12(1)] of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section [11 or 12(1)] of this title more than three years after the security was bona fide offered to the public, or under section [12(2)] of this title more than three years after the sale.

Defendants contend that plaintiffs claims should be dismissed because they were initiated more than three years after the offer or sale of the securities in question. With the exception of the transactions at issue in *Gomberg v. American Bank and Trust Company, et al.*, 641 F.Supp. 62 (E.D.Pa. 1986), the complaints show that the sales in question took place between June, 1979, and January, 1981.[2] The complaints were filed in August and September, 1984, more than three years later.

Plaintiffs argue that the three year limitations period is not an absolute bar to suit but is subject to equitable tolling where there has been concealment of the fraud. I

---

1. In five of the eight actions involved in this proceeding, Civil Action Nos. 84–4196, 84–4198, 84–4199, 84–4465, and 84–4611, plaintiffs purchased their cattle and entered into maintenance agreements with DCMC. In the other three actions, Civil Action Nos. 84–4056, 84–4197, and 84–4466, plaintiffs entered into purchase and maintenance agreements with only David Paul. Sol Sardinsky is alleged to have acted in an advisory capacity in the three latter proceedings. DCMC, Ledbetter, and Yogel are not named as defendants in those actions.

2. The alleged sale of securities in Civil Action No. 84–4197 took place in September, 1981.

The complaint in that action was filed on August 31, 1984, within the three year period. The action is, therefore, not barred by the statute of limitations if it was brought within one year after the discovery of the untrue statement or omission, or after the discovery should have been made by the exercise of reasonable diligence. 15 U.S.C. § 77m. Because plaintiff alleges that defendants concealed their fraudulent conduct, the question of when plaintiff should have discovered the fraud is an issue of fact not appropriately resolved on a motion to dismiss.

disagree. Section 77m unequivocally states that "in no event" shall an action under §§ 12(1) or 12(2) be brought more than three years after the transaction at issue. As noted in *Engl v. Berg*, 511 F.Supp. 1146, 1150 (E.D.Pa.1981), the overwhelming weight of authority holds that the three year limitation set out in § 77m is absolute, equitable considerations notwithstanding. Moreover, in construing the similar provisions of § 9(e) of the Exchange Act, 15 U.S.C. § 78i(e) (1983), the court of appeals for the third circuit held that "[a]pplication of a tolling theory based on discovery of the wrong clearly would do violence to a statute containing its own limited discovery rule." *Walck v. American Stock Exchange, Inc.*, 687 F.2d 778, 792 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983). *See also, Alloy v. Miller*, No. 83–4780, slip op. at 11 n. 5 (E.D.Pa. February 8, 1984).

In keeping with this precedent, I find that, in all of these cases except for Civil Action No. 84–4197, the claims brought under §§ 12(1) and 12(2) of the Securities Act are barred by the statute of limitations and will be dismissed.

### *Claims Under § 15(a)(1) of the Exchange Act*

■ Defendants assert that plaintiffs' claims under § 15(a)(1) of the Exchange Act should be dismissed because there is no private right of action for violations of that section.[3] First, they argue that there is nothing in the language or legislative history of this section that creates or implies such a right. Second, they point to two recent cases, *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1313–14 (9th Cir.1982), and *Walck v. American Stock Exchange, Inc.*, 565 F.Supp. 1051, 1059 (E.D.Pa.1981), *aff'd on other grounds*, 687 F.2d 778 (3d Cir. 1982), *cert. denied*, 461 U.S. 942, 103 S.Ct.

2118, 77 L.Ed.2d 1300 (1983) which hold that there is no private cause of action under § 15 of the Exchange Act. Third, defendants cite by analogy *Touche, Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), and *Walck v. American Stock Exchange, Inc.*, 687 F.2d 778 (3d Cir.1982). In *Touche, Ross & Co.*, the Supreme Court held that there was no private cause of action under § 17(a) of the Exchange Act. The court specifically stated that "§ 17(a) is flanked by provisions of the 1934 Act that explicitly grant private causes of action.... Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." 442 U.S. at 571–2, 99 S.Ct. at 2486–7. Similarly, in *Walck*, the court of appeals held that there is no private right of action under § 6 of the Exchange Act and stated that "the express provision of private remedies has been treated in numerous decisions as strong evidence of congressional intent not to create additional private remedies by implication." 687 F.2d at 784.

I am persuaded by defendants' arguments and by the case law in this area. I hold that there is no implied private right of action under § 15 of the Exchange Act. Accordingly, plaintiffs' claims brought under that section will be dismissed.[4]

### *Claims Under § 10(b) of the Exchange Act*

■ Because there is no explicit statute of limitations for § 10(b) claims, a federal court must look to state law to determine the appropriate period of limitations for such claims. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976). Recent opinions by the court of appeals for this circuit teach that, where state securities legisla-

---

**3.** The complaints incorrectly state that these claims are brought pursuant to § 11 of the Exchange Act. In subsequent filings, however, both defendants and plaintiffs correctly refer to these claims as being brought pursuant to § 15(a)(1) of the Exchange Act, 15 U.S.C. § 78*o* (a)(1).

**4.** Defendants also assert that the claims under § 15(a)(1) are barred by the statute of limitations. In view of my holding that there is no private cause of action under this section, I do not reach the issue of whether the claims are time-barred.

tion provides plaintiff with a cause of action for the relief requested under § 10(b) of the Exchange Act, the limitations period established by the state securities laws will apply to the federal claim. *See Sharp v. Coopers & Lybrand,* 649 F.2d 175 (3d Cir. 1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3d Cir.1980); *Roberts v. Magnetic Metals Company,* 611 F.2d 450 (3d Cir. 1979).

In this case, plaintiffs' § 10(b) claims appear to be encompassed by provisions of the Pennsylvania Securities Act that prohibit fraud in connection with securities transactions. Specifically, § 401, which is modeled after Rule 10b–5 of the federal securities laws, prohibits fraud in connection with the offer, sale, or purchase of any security. Pa.Stat.Ann. tit. 70, § 1–401 (Purdon Supp.1985). Plaintiffs' claims against certain defendants might also be encompassed within §§ 403 and 404 of the Pennsylvania Securities Act, Pa.Stat.Ann. tit. 70, §§ 1–403 and 1–404 (Purdon Supp. 1985). Section 403 makes it unlawful for a broker-dealer or agent to use fraud in effecting a securities transaction or in inducing or attempting to induce the purchase or sale of a security. Section 404, among other things, makes it unlawful for investment advisers to engage in fraudulent practices.

The Pennsylvania Securities Act also appears to provide plaintiffs with a cause of action for damages against defendants. The basis of civil liability for violations of §§ 401, 403 or 404 is found in § 501, Pa. Stat.Ann. tit. 70, § 1–501 (Purdon Supp. 1985). Section 501(a) provides, in relevant part:

> Any person who ... offers or sells a security in violation of sections 401, 403, 404 or otherwise by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the purchaser not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission, shall be liable to the person purchasing the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at the legal rate from the date of payment, less the amount of any income or distributions, in cash or in kind, received on the security, upon the tender of the security, or for damages if he no longer owns the security.

In addition, under § 503(a) of the Pennsylvania Securities Act:

> Every affiliate of a person liable under section 501 or 502, every partner, principal executive officer or director of such person, every person occupying a similar status or performing similar functions, every employe of such person who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the person liable hereunder proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

Pa.Stat.Ann. tit. 70, § 1–503(a) (Purdon Supp. 1985).

Read together, and in light of the allegations of the complaints, §§ 501 and 503 appear to provide plaintiffs with a cause of action against all defendants for the relief requested under § 10(b) of the Exchange Act.[5] Thus, the appropriate limitations pe-

---

5. I am aware that the court of appeals has held that § 501 provides the sole source of civil liability for violations of §§ 401, 403 or 404 of the Pennsylvania Securities Act, and that § 501 grants a private remedy to a buyer only against his seller. *Biggans v. Bache Halsey Stuart Shields,* 638 F.2d at 609–10; *Sharp v. Coopers & Lybrand,* 649 F.2d at 191–92. Neither of these

riod to apply to plaintiffs' claims is that found in § 504(a) of the Pennsylvania Securities Act, Pa.Stat.Ann. tit. 70, § 1–504(a), (Purdon Supp. 1985). That section provides:

> No action shall be maintained to enforce any liability created under section 501 (or section 503 in so far as it relates to that section) unless brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire.

Under this provision, a plaintiff is barred from bringing suit under the Pennsylvania securities laws more than three years after the allegedly fraudulent transaction, regardless of whether plaintiffs knew, or should have known, of the fraud. In this proceeding, with the exception of the transactions involved in the *Gomberg* action, Civil Action No. 84–4197, the sales of securities in question took place more than three years before the plaintiffs initiated suit. Applying the limitations period of § 504(a), plaintiffs § 10(b) claims would be time-barred because they were not brought within three years of the act or transaction constituting the alleged violation.[6]

Plaintiffs argue that their § 10(b) claims are not untimely because, although state law provides the limitations period, federal law determines when the period begins to run. Plaintiffs assert that, under the federal equitable tolling doctrine, the limitations period does not begin to run until plaintiffs knew, or should have known, of the alleged fraud.

The issue raised by plaintiffs is a troublesome one that was explicitly reserved by the court of appeals in the *Biggans* case. 638 F.2d at 607 n. 3. The *Biggans* court did, however, suggest that a state tolling statute could not limit the application of the federal equitable tolling doctrine. *Id.* Judges in this district who have since addressed this issue have generally reached the same conclusion. *See Bedford v. Lockhart-Bright Associates,* No. 82–5574, slip op. at 3 (E.D.Pa. Nov. 1, 1985) [Available on WESTLAW, DCTU database]; *Greenberg v. RRI XX Management Corp.,* No. 85–1262, slip op. at 6–8 (E.D.Pa. July 31, 1985); *Ferber v. Morgan Stanley Co.,* No. 83–1470, slip op. at 8–9 (E.D.Pa. Jan. 9, 1984) [Available on WESTLAW, DCTU database]; *Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234, 240 (E.D.Pa.1983). *But see Alloy v. Miller,* No. 83–4780, slip op. at 13 n. 6 (E.D.Pa. Feb. 8, 1984). While the matter is not free from doubt, I conclude that the better approach is to borrow the limitations provisions from the Pennsylvania Securities Act but still utilize the federal equitable tolling doctrine. Therefore, the plaintiffs § 10(b) claims are barred only if they filed suit more than one year after the plaintiff knew or should have known of the facts constituting the securities viola-

---

cases, however, discusses the scope of civil liability stemming from the interrelationship of §§ 501 and 503. Under certain circumstances, § 503 appears to extend civil liability to groups of non-sellers. In the only reported state court case to discuss § 503, the Pennsylvania Superior Court noted that "there are at least two ways in which an attorney can be held liable for his involvement in a securities deal: he can be liable to his client under common law professional malpractice principles and he can be held liable to an investor as a violator of the Securities Act itself." *Brennan v. Reed, Smith, Shaw & McClay,* 340 Pa.Super. 399, 450 A.2d 740, 747 (1982). In addition, in *In re Catanella and E.F. Hutton and Co.,* 583 F.Supp. 1388 (E.D.Pa.1984), the court noted that § 503 creates "aider-abettor type liability" for a broker-dealer who materially aids in the transaction. *Id.* at 1440 n. 76.

Considering all these factors, I conclude that actions against certain non-sellers will lie under § 503. In this proceeding, all defendants against whom plaintiffs bring § 10(b) claims are alleged to be either sellers who would be liable directly under § 501 or broker-dealers who are potentially liable under § 503. Section 503 liability might also exist for the principals of DCMC as a result of their roles in that corporation.

6. For purposes of this discussion, I am assuming that the transactions in question were the initial sales of shares in the herds effected between 1979 and 1981. Later in the opinion I consider plaintiffs' argument that additional § 10(b) sales occurred in 1982.

tion. Since the plaintiffs allege that the defendants concealed their fraudulent conduct, the question of when the plaintiffs should have discovered the fraud is an issue of fact that should not be resolved on a motion to dismiss. Thus, the plaintiffs' § 10(b) claims, at this time, are not barred by the applicable statute of limitations.

■ Although I have decided that federal equitable tolling should be applied to the present case, this issue is still, to some degree, questionable. Therefore, I am compelled to discuss the plaintiffs other arguments as to why their § 10(b) claims should not be time barred if equitable tolling were not applied to the case at bar. Assuming that the three year statute of limitations as set out in § 504(a) is applied, the plaintiffs argue that their § 10(b) claims are not time-barred because transactions occurred within the three year limitations period that constitute "sales" of securities for purposes of § 10(b). Plaintiffs allege that defendants made material, misleading representations in connection with these later transactions in violation of § 10(b).

Before changes in the rights of a security holder can qualify as the "purchase" of a new security under § 10(b), there must be such a significant change in the nature of the investment or in the investment risks as to amount to a new investment. *Abrahamson v. Fleschner,* 568 F.2d 862, 868 (2d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978). *See also Keys v. Wolfe,* 709 F.2d 413, 417 (5th Cir.1983).

In this case, plaintiffs contend that the assignments of cattle maintenance contracts from DCMC or Paul to Walebe changed the nature of their investments so substantially that they should be considered § 10(b) sales. In support of this argument, plaintiffs point to the case of *Ingenito v. Bermec Corporation,* 376

F.Supp. 1154 (S.D.N.Y.1974), in which the court held that the substitution of a modified cattle maintenance contract for the maintenance contract entered into at the time of the initial sales contract constituted the sale of a security for purposes of § 10(b). *Id.* at 1180. In a subsequent discussion, the court stated that:

> [T]he maintenance contract was the pivot on which investor expectations turned, since only by maintaining the herds could their equity "grow," or even "survive." Conversely, the choice to cancel the maintenance contract, *assign it to another cattle farm* or liquidate the herd involved an investment choice as well, since it represents a decision to redeploy capital in other, more profitable, enterprises.

*Id.* at 1184 (emphasis added).

In assessing the validity of plaintiffs' argument, I am mindful that a motion to dismiss should not be granted unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While plaintiffs have not articulated their argument in detail, I am not able to say at this time that they can prove no set of facts that would entitle them to relief. Based on the allegations of the complaints, it appears that plaintiffs in seven of the eight proceedings agreed to the assignment of their cattle maintenance contracts to Walebe Farms.[7] Those plaintiffs will be permitted to try to show that the exchange of maintenance contracts fundamentally altered their investment and that fraud occurred in connection with these transactions in violation of § 10(b). Damages would presumably be limited to those flowing from the assignment of the maintenance contracts. *Cf. Goodman v. Epstein,* 582 F.2d 388, 415 (7th Cir.1978).

---

7. In *Fazio v. Dairy Cattle Management Corporation,* 641 F.Supp. 62 (E.D.Pa.1986), allegations of the complaint show that plaintiff refused to agree to an assignment of the maintenance contract from DCMC to Walebe Farms. In *Dermond v. Dairy Cattle Management Corporation,* 641 F. Supp. 62 (E.D.Pa.1986), one of the plaintiffs refused to agree to the assignment of the maintenance contract from DCMC to Walebe Farms. However, the assignment was completed anyway and that plaintiff still paid Walebe Farms over $36,000.00.

In sum, the plaintiffs' § 10(b) claims are not barred by the borrowed state statute of limitations set out in § 504(a) of the Pennsylvania Securities Act. Although this statute prevents all plaintiffs from bringing an action more than three years after the claim arose, the federal equitable tolling doctrine prevents this absolute bar of the plaintiffs' § 10(b) claims. Even if the equitable tolling doctrine was not applicable, the plaintiffs' § 10(b) claims would not be totally barred in seven of these cases for the reasons discussed in this opinion.

*Claims Under the Racketeer Influenced and Corrupt Organization Act ("RICO")*

█ Defendants' argue that the plaintiffs do not have standing to bring an action under RICO, 18 U.S.C. §§ 1961–68. Some courts have construed the RICO statute to require the plaintiff to have suffered a "racketeering injury" in order to be able to bring a RICO action. *See Sedima, S.P. R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir. 1984), *rev'd*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984); *Landmark Savings & Loan v. Loeb, Rhoades, Hornblower & Co.*, 527 F.Supp. 206, 208–9 (E.D.Mich.1981). A "racketeering injury" requires that the plaintiff's injury be directly related to the pattern of racketeering activity and the enterprise. Relying on this judicial precedent, the defendants argue that the plaintiffs in these cases did not suffer this type of injury and therefore do not have standing to bring a RICO action.

This court deferred consideration of these claims pending a decision by the United States Supreme Court on this issue in *Sedima.* On July 1, 1985, the Supreme Court reversed the Second Circuit Court of Appeals and conclusively determined that incurring a "racketeering injury" is not a prerequisite to bringing a RICO action. *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The Court took a less restrictive reading of the statute and struck down this construc-

tion as a form of statutory amendment not appropriately undertaken by the courts. The *Sedima* precedent makes it clear that a "racketeering injury" requirement is not necessary and the plaintiffs' claims cannot be dismissed for this reason.

The defendants also argue that the RICO claims should be dismissed because they are barred by the statute of limitations. Characterizing the plaintiffs' RICO claim as a securities fraud action of the type prohibited by § 10(b) of the Exchange Act, the defendants suggest that the 3–year statute of limitations in § 504 of the Pennsylvania Securities Act should bar this RICO action. As I have stated in the § 10(b) section of this opinion, the equitable tolling doctrine should be applied to prevent the barring of all § 10(b) claims. Similarly, it would also be used to prevent any RICO action from being barred by the Pennsylvania statute of limitations. Furthermore, the courts are unclear as to the Pennsylvania statute of limitations which should be borrowed for RICO actions and a common fraud statute may be the more appropriate statute. *See Kirschner v. Cable/Tel Corp.*, 576 F.Supp. 234, 241 (E.D. Pa.1983); *Eisenberg v. Gagnon*, 564 F.Supp. 1347 (E.D.Pa.1983). Therefore, the plaintiffs' RICO claims are not barred by the relevant statute of limitations.

Finally, the defendants argue that the plaintiffs' pleadings are improper in that they fail to allege the necessary elements of a RICO action. Also, the defendants argue that the complaint does not plead fraud with sufficient specificity to meet the requirements of F.R.C.P. 9(b).

The Third Circuit Court of Appeals has held that a plaintiff's pleadings do not have to allege all of the elements of a RICO claim but only have to provide notice to the defendant of the claims against him. *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 789–90 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). Also, the *Seville* case establishes precedent that Rule 9(b) does not require the exact details of a fraud to be pleaded

but only the circumstances of the fraud so that the defendant has notice of the precise misconduct of which he is charged. *Id.* at 791. Although the plaintiffs' complaints are probably sufficient to put the defendants on notice as to the claims against them, the complaint does not specify the types of misconduct and theories of liability of which the defendants are charged. Therefore, the plaintiffs are given leave to amend their complaints to provide such specificity.

### State Claims

Certain of the state claims in all of the proceedings should be dismissed. Specifically, plaintiffs' claims for violations of § 201 of the Pennsylvania Securities Act, Penn.Stat.Ann. tit. 70, § 1–201 (Purdon Supp.1985), are barred by the statute of limitations. The source of civil liability for violations of § 201 is found in § 502 of the Pennsylvania Securities Act, Penn.Stat. Ann. tit. 70, § 1–502 (Purdon Supp.1985). Actions brought pursuant to § 502 are governed by the limitations period set out in § 504(b), Penn.Stat.Ann. tit. 70, § 1–504(b) (Purdon Supp.1985), which provides that an action brought under § 502 must be commenced either within one year after plaintiff had or should have had notice of the violation or within two years of the violation, whichever is earlier. Plaintiffs claims under § 502 are based on transactions that took place between June, 1979, and January, 1981 (the sale of cattle and execution of promissory notes and maintenance agreements). These suits were not commenced until August and September, 1984, well after the two year limitations period expired. Accordingly, these claims will be dismissed.

Plaintiffs' claims for violations of § 301 are also barred by the statute of limitations in seven of the eight proceedings.[8] The source of civil liability for violations of § 301 is found in § 501 of the Pennsylvania Securities Act, and the applicable limitations period is found in § 504(a). Pa.Stat. Ann. tit. 70, §§ 1–501, 1–504(a) (Purdon Supp.1985). As discussed earlier in this opinion, § 504(a) requires that suit be commenced within three years of the violations, which allegedly occurred between June, 1979, and January, 1984. Because these actions were not filed until August or September, 1984, the claims under § 501 are untimely and will be dismissed.

Defendants have not argued that any state common law claims are time-barred, and I express no opinion on that issue at this time.

### Summary

For the reasons set forth above, defendants' motions to dismiss will be granted in part as follows. Plaintiffs' claims under §§ 12(1) and 12(2) of the Securities Act will be dismissed in all cases except Civil Action No. 84–4197. Plaintiffs' claims under § 15(a)(1) of the Exchange Act will be dismissed in all cases. Plaintiffs' claims for violations of § 201 of the Pennsylvania Securities Act will be dismissed. Plaintiffs' claims for violations of § 301 of the Pennsylvania Securities Act will be dismissed in all cases except Civil Action No. 84–4197. An appropriate order will issue.[9]

### ORDER

AND NOW, this 13 day of January, 1986, upon consideration of defendants' motions to dismiss and plaintiffs' responses thereto, IT IS ORDERED as follows:

1. Plaintiffs' claims brought pursuant to §§ 12(1) and 12(2) of the Securities Act of 1933 are DISMISSED except in Civil Action No. 84–4197.

2. Plaintiffs' claims pursuant to § 15(a)(1) of the Securities Exchange Act of 1934 are DISMISSED.

---

**8.** The complaint in *Gomberg v. American Bank and Trust Company,* 641 F.Supp. 62 (E.D.Pa. 1986), was filed within the three year limitations period applicable to these claims. *See infra* note 2 and accompanying text.

**9.** I defer ruling on the issue of whether the transactions in question involved sales of securities within the meaning of the federal securities statutes until further discovery has been conducted in this matter.

3. Plaintiffs' claims brought for violations of § 201 of the Pennsylvania Securities Act of 1972 are DISMISSED.

4. Plaintiffs' claims brought for violations of § 301 of the Pennsylvania Securities Act of 1972 are DISMISSED in all cases except Civil Action No. 84–4197.

5. In all other respects, the motions are DENIED.

6. In an oral order, plaintiffs were given until November 19, 1985, to amend their complaints to include sufficient specificity of fraud pursuant to F.R.C.P. 9(b). This paragraph no. 6 is for clarification only.

7. The plaintiffs in these cases will be taking depositions for three weeks beginning February 3, 1986. The defendants will be taking depositions for one week beginning February 24, 1986. All attorneys are instructed to be available for this four-week period so that they can attend these depositions.

8. Defendants are given leave to file motions for summary judgment and briefs in support thereof provided same are filed on or before May 15, 1986.

9. Plaintiffs shall file reply briefs on or before June 6, 1986.

10. Argument shall be held on Friday, June 13, 1986, at 9:30 A.M. in Courtroom 2, Old Lehigh County Courthouse, 501 Hamilton Street, Allentown, Pennsylvania.

11. All discovery shall be completed on or before June 1, 1986.

12. The within cases are placed on the September, 1986, jury trial list.

13. Jury selection shall take place on Monday, September 8, 1986, at 10:00 A.M. in Courtroom 3B, United States Courthouse, Philadelphia, Pennsylvania.

14. Trial shall commence on Tuesday, September 9, 1986, in Courtroom 2, Old Lehigh County Courthouse, 501 Hamilton Street, Allentown, Pennsylvania.

15. On or before August 12, 1986, counsel for the parties shall file with the Clerk and serve on the opposition:

(a) A list of all exhibits to be used at the trial. All exhibits shall be premarked and counsel shall exchange with each other copies of all documentary and photographic exhibits and shall provide an opportunity for opposing counsel to view any models or video tapes;

(b) A list of each witness to be called at the trial setting forth the point or points to be established by the testimony of each witness;

(c) Memoranda of Law on all legal and evidentiary issues expected to arise at trial;

(d) Requests for instruction to the jury.