**Linda JORDAN, Plaintiff,**

v.

**Frederick V. McDONALD, Jr., Asset Management Associates, Inc., Defendants.**

**Civ. A. No. 90–10606–Y.**

United States District Court,
D. Massachusetts.

Oct. 15, 1992.

Bruce E. Falby and Joseph Faber, Hill & Barlow, Boston, Mass., for plaintiff.

Eric I. Zucker, Deutsch, Williams, Brooks, DeRensis, Holland & Drachman, Boston, Mass., George V. Cornell, Staten Island, N.Y., for defendants.

**MEMORANDUM AND ORDER ON MOTION FOR DIRECTED VERDICT**

LAWRENCE P. COHEN, United States Magistrate Judge.

This Memorandum and Order memorializes the oral rulings entered by this court

upon defendants' motion for a directed verdict.[1]

## A. *Count 1*

■ Count 1 alleges misrepresentations in connection with the sale of securities in violation of Section 2 of the Securities Act of 1933.

The security in this case was a limited partnership. That limited partnership was offered by defendants to the plaintiff in August 1986, and she paid $10,000 therefor shortly thereafter. She became a limited partner, owning one unit of that limited partnership, no later than August 1986. The complaint in this case was filed on March 8, 1990.

Defendants have raised the affirmative defense of the statute of limitations. Actions brought under the provisions of Section 2 are governed by the provisions of Section 13 of the Securities Act of 1933. That statute provides for a two-tiered limitation period. Under that statute, an action must be brought within one year of the "discovery" of the violation, *and*, in any event, within "three years after the sale."

In her initial opposition to the motion to dismiss, plaintiff urged that the so-called "discovery" rule applied, and that the plaintiff did not "discover" the alleged wrong until sometime in 1989.

It is clear, as set forth above, that Section 12(2) is governed by the time limitations set forth in section 13 of the 1933 Act, 15 U.S.C. § 77m. *Hoffman v. Estabrook & Co., Inc.*, 587 F.2d 509, 518 (1st Cir. 1978). Section 13 mandates that a claim under section 12(2) must be brought within three years of the sale. *Roebuck v. Guttman*, 678 F.Supp. 68, 69 (S.D.N.Y.1988).

To the extent that plaintiff seeks to invoke the so-called discovery rule, *see infra*,

the long and short of the matter is that Section 13 of the Act [15 U.S.C. § 77m] specifically limits the time to three years, notwithstanding the time of discovery. That is to say, the unequivocal language of Section 13 says as much, and well-established authority indicates that Congress said what it meant, and meant what it said. *E.g., Walck v. American Stock Exchange, Inc.*, 687 F.2d 778, 792 (3d Cir.1982), *cert. denied*, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983) ("[a]pplication of a tolling theory based on discovery of the wrong clearly would do violence to a statute containing its own limited discovery rule."); *McLernon v. Source Intern., Inc.*, 701 F.Supp. 1422, 1428 (E.D.Wis.1988) ("... the three year 'outside limit' ..."); *Zola v. Gordon*, 685 F.Supp. 354, 360–63 (S.D.N.Y. 1988) ("This period is an absolute outer limitation"); *Bull, et al. v. American Bank and Trust Co. of Pa., et al.*, 641 F.Supp. 62 (E.D.Pa.1986).

As an alternative, before the district judge to whom this case was formerly assigned,[2] and again before this court, plaintiff, based on a holding in *Raiford v. Buslease, Inc.*, 825 F.2d 351 (11th Cir.1987), contended that the "sale" within the meaning of Section 13 did not occur until August 1987—the date on which plaintiff "contributed" some $11,000 more into the limited partnership.[3] That is to say, again relying on the *Raiford* holding, plaintiff contends that the "last stage" of the transaction did not occur until August 1987, and that, therefore, the complaint was filed in a timely fashion.

In this court's view, however, *Raiford* is simply not controlling. *Raiford* approached the limitations question in the context of an action brought under Section 12(1) of the Securities Act of 1933—not

---

1. The case was tried before this court with the consent of the parties consistent with the provisions of 28 U.S.C. Section 636(c) and Rule 4(c) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts.

2. The district judge denied the motion to dismiss, but it is clear that the district judge left the

matter for further consideration after the evidence had been presented at trial.

3. The limited partnership agreement provided that the general partner could call for further contributions of capital by the limited partnership. In this case, the general partner did exactly that, and plaintiff provided another $11,000 to the partnership venture.

Section 12(2). And that clearly presents a distinction with a difference.

As recently observed by the United States Court of Appeals for the Second Circuit in *Finkel v. Stratton Corp.*, 962 F.2d 169, 173 (2d Cir.1992):

> *Raiford* involved a claim under § 12(1) of the '33 Act based on an asserted failure to file a registration statement. The plaintiff brought suit more than one year after the contract of sale but less than one year after the transfer of funds pursuant to the sale. The Eleventh Circuit found plaintiffs' claim timely. The court reasoned that Congress structured the '33 Act to create an ongoing incentive to register securities. *Id.* at 354. Requiring plaintiffs to file suit within a year from the contract of sale would truncate that incentive and thus violate Congressional intent. *Id.* Accordingly, the court determined that the one year period ran from the transfer of funds and allowed plaintiffs' claim to go forward. Plaintiffs here argue on the strength of *Raiford* that the statute of limitations began to run from the closing on July 25, 1985, rather than from the moment the contract of sale became binding.

However, *Raiford* is readily distinguishable. First, *Raiford* considered the one year prong of the statute of limitations, which, in § 12(1) cases, runs from the "violation," not the date of "sale." Thus, *Raiford* gave an expansive meaning to a different word than is at issue here. More importantly, unlike in the § 12(1) context, construing the statute of limitations broadly on a § 12(2) claim would undermine Congressional purpose.

On plaintiffs' theory, if a buyer contracted to buy a security, with payments due every six months for twenty years, with title to pass at the end of the twenty year period, the buyer could use § 12(2) to sue the seller for fraudulent statements made ten years after the contract. Such open ended liability would frustrate the repose provided by § 13. While this may be appropriate in § 12(1) cases where the law imposes a continuing obligation, there is no need for such an extension of the statute of limitations in § 12(2) cases. Accordingly, we think that the district court correctly determined that a sale occurs for § 12(2) purposes when "the parties obligate[ ] themselves to perform what they had agreed to perform even if the formal performance of their agreement is to be after a lapse of time." *Amoroso v. Southwestern Drilling Multi–Rig Partnership, No. 1*, 646 F.Supp. 141, 143 (N.D.Cal. 1986) (quoting *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir.1972)). We affirm the district court's conclusion that plaintiffs' § 12(2) claims are time barred.

In this court's view, *Finkel* is not only controlling, but more persuasive as well. Defendants' Motion for a Directed Verdict is accordingly allowed as to Count 1 of the First Amended Complaint.

### B. *Count 4*

Count 4 alleged a violation of the Massachusetts Blue Sky Laws (Chapter 110A, §§ 301 and 410), specifically alleging a sale of unregistered securities in violation of § 301.

At the conclusion of the plaintiff's case, and upon defendant's motion for a directed verdict, this court inquired as to the sufficiency of the evidence on that count. In response, plaintiff, through counsel, indicated that she would waive that count.

In any event, there was no evidence whatsoever to show that the limited partnership interest sold to plaintiff was *not* registered as required by Section 301.[4]

Defendants' Motion for a Directed Verdict on Count 4 of the First Amended Complaint is accordingly allowed.

### C. *Count 6*

■ In Count 6, plaintiff alleged that she was entitled to treble damages under Mass. Gen.Laws, Ch. 231, Section 85J, upon a

---

4. Indeed, counsel for plaintiff, in good candor, volunteered that he was then of the view that the limited partnership interests had, indeed, been registered under Section 301.

showing that the defendants [5] fraudulently induced her to buy the limited partnership.[6] Specifically, she alleged that a limited partnership interest is defined in Mass.Gen. Laws, Ch. 109, § 18, and, hence, sale of that limited partnership by means of fraud constitutes a "sale of personal property" within the meaning of Section 85J.

In the circumstances, this court finds and concludes that, on the facts and on the law, plaintiff is not entitled to an award of treble damages:

1. On an earlier occasion, the district judge to whom this case was assigned dismissed all of Count 6 except to the extent that claims were made against defendant McDonald in his capacity as general partner of the Church Lane Limited Partnership.

2. In this court's view, plaintiff has *not* satisfied this court that the plaintiff was defrauded as alleged in Count 5 of the Amended Complaint by defendant McDonald in his capacity as a *general partner*. To be sure, defendant McDonald was, as conceded, general partner of the Church Lane Limited Partnership at the time of the alleged misrepresentations. And, to be sure, plaintiff became a limited partner in that limited partnership *after* the alleged misrepresentations.

In this court's view, plaintiff has not established that defendant McDonald violated any duties owed by him to plaintiff as *general partner*. At the time of the alleged misrepresentations, as general partner, he did, of course, owe partnership duties to those limited partners, if any, who had already purchased limited partnership duties. But plaintiff clearly cannot sue on their behalf. And *after* plaintiff purchased her limited partnership interest, those duties were owed to her as well. But plaintiff has failed to show that defendant McDonald *qua* general partner of Church Lane Limited Partnership violated any partnership duty owed to plaintiff. It therefore cannot be said that McDonald *qua* general partner *fraudulently* sold any property—personal or otherwise—to plaintiff.

3. Even if it could be fairly said that McDonald sold the limited partnership interest to plaintiff in his capacity as General Partner, this court finds that the *sale* of that limited partnership interest did not constitute a *sale* of *personal property* within the meaning of Section 85J.

To be sure, as plaintiff says, Mass.Gen. Laws, Ch. 109, § 18,[7] indicates that a partnership interest is personal property. But no Massachusetts case has suggested that the *sale* of a limited partnership interest constitutes a *sale* of *personal property* within the meaning of Section 85J. To the contrary, the scant case law indicates to the contrary, notwithstanding the language of Section 18 of Chapter 109. In *Bonin v. Chestnut Hill Towers Realty Co.*, 14 Mass. App. 63, 436 N.E.2d 970 (1982), the court grappled with the nature of that creature defined as a limited partnership—more particularly, as here, a limited partnership in a real property venture.[8] Although aware of

---

5. On an earlier occasion, the district judge to whom this case was assigned dismissed Count 6 as to all defendants except defendant McDonald in his capacity as general partner in the limited partnership.

6. Count 6 was, with the consent of all parties, tried to the court and not to the jury. Plaintiff originally demanded jury trial on that count, and had submitted proposed jury instructions thereon. When the matter of a right to jury trial on that count was raised by this court sua sponte prior to trial, given the holding in *In re Bedford Computer Corporation v. Ginn Publishing, Inc.*, 63 B.R. 79, 14 Bankr.Ct.Dec. (CRR) 1071 (D.N.H.1986), in which Judge Devine concluded that the legislature did not intend that a claim under Section 85J be tried before a jury, counsel for plaintiff opined that, in his view, the

matter was one properly for the court alone— that is, should the jury find for plaintiff and against defendants on Count 5 alleging common law fraud, then the court was required to award treble damages under Mass.Gen.Laws, Ch. 231, Section 85J. Counsel for defendants agreed to that procedure as well.

7. Chapter 109 is modelled after the Uniform Limited Partnership Act.

8. In that case, the plaintiff, a real estate broker, contended that he was entitled to a real estate "commission" for his role·in arranging a syndication, that is, "a sale of limited partnership interests in the real estate venture[.]" The court concluded that he was not. *Id.*, 436 N.E.2d at 971.

the language of Section 18, that Court observed, *inter alia (Id.,* 436 N.E.2d at 975)—

> But here no sale of the real estate took place. Rather there was a sale of limited partnership interests through the agency of Katz's firm, PIP. Limited partnership interests are personal property, G.L. c. 109, § 18, *and their sale is treated as a sale of securities.*[9] *Bartels v. Algonquin Properties, Ltd.,* 471 F.Supp. 1132, 1146 (D.Vt.1979). See also *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975) (security defined as "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others").

> Limited partnerships as a vehicle to pass tax losses through to high tax bracket investors have burgeoned in the past decade. Because of this relatively recent usage, the decisional literature is sparse. The distinction between the sale

9. Significantly, in this court's view, plaintiff *does* take the position that a limited partnership interest *is* a "security" within the meaning of the Massachusetts Blue Sky Laws [Section 401(k) of Chapter 110A]. And, of course, plaintiff must take that position to prevail on Count 3, alleging a violation of the Blue Sky Laws (Section 410(a)(2) of Chapter 110A, the Massachusetts counterpart to Section 12(2) of the Securities Act of 1933).

10. In discussing the reach of California's Blue Sky law, that court observed (13 Cal.2d at 690, 91 P.2d at 897)—

> "In decisions in this state and in other jurisdictions where it has been contended that a transaction under attack did not come within the Corporate Securities Act *because it constituted only a sale of* specific real or *personal property* or an interest therein, the courts have looked through form to substance and found that in fact the transaction contemplated the conduct of a business enterprise by others than the purchasers, in the profits or proceeds of which the purchasers were to share." The court went on to say that "such interests are generally declared to be investment contracts, which are included in the definition of 'security' in the Blue Sky Law of this and other states,...". (Emphasis added).

11. Again, in another California case interpreting the reach of the California Blue Sky Law, that court observed (219 Cal.App.3d at 1402, 269 Cal.Rptr. at 113)—

of securities and the sale of real estate was recognized in *Sunshine v. Mid-South Constr., Inc.,* 496 S.W.2d 708 (Tex.Civ.App.1973), in which the court said of the plaintiff's activity in selling limited partnership interests: "In doing so he was not acting as a real estate broker." *Id.* at 711.

*See also, People v. Davenport,* 13 Cal.2d 681, 91 P.2d 892 (1939); [10] *People ex rel. Bender v. Wind River Mining Project,* 219 Cal.App.3d 1390, 269 Cal.Rptr. 106 (1990).[11]

4. This reading of the definition of a sale of a limited partnership interest—indeed, the very reading referred to in *Bonin, supra*—is in complete harmony with current Massachusetts law governing remedies for fraud in the sale of securities. As observed by Judge McNaught of this Court in *Medlinsky v. Kidder, Peabody and Co.,* Civil Action No. 89–1757–Mc, Memorandum and Order, 1989 WL 10737, 1989 U.S.Dist. LEXIS 1232 (D.Mass.1989)[12]—

> Defendants assert that gold is highly saleable on an active market, and that accordingly their gold certificates are simply "the naked sale of tangible personal property." Since the courts look through form to substance, what is in substance the sale of securities cannot be masked through the artifice of putting it in the form of a sale of property.

12. In a supplemental Memorandum of Law filed on October 14, 1992, plaintiff referred to the case of *Baybank Middlesex v. 1200 Beacon Properties, Inc.,* 760 F.Supp. 957, 971 (D.Mass. 1991), albeit as dicta, for the position that Section 85J does apply to the sale of a limited partnership interest.

Although Judge Caffrey did, most parenthetically, in that decision allude to the holding in *Hamed v. Fadili,* 408 Mass. 100, 556 N.E.2d 1020 (1990), nothing in that latter decision comes even remotely close to the position urged by plaintiff. The only issue advanced, and the only issue decided, in *Hamed* was whether or not the trial judge erred amending, sua sponte, a complaint to add a Section 85J claim after the close of all of the evidence. The Massachusetts Supreme Judicial Court concluded that the trial judge erred. In so concluding, that Court did not address the merits of a Section 85J claim in any respect. The Court simply held that the untimely and sua sponte amendment was prejudicial to the defendant—nothing more; and nothing less.

Nor can plaintiff find any support for that decision in *Nicolaci v. Abedon,* 1989 WL 142730

Defendant claims that although the legislature amended c.93A to create a cause of action for fraudulent practice with regard to security transactions,[13] they specifically exempted securities from the statute's multiple damages clause.[14] Defendant reasons that this clear policy contravenes plaintiff's assertion of § 85J's applicability because, among other reasons, it assesses treble damages against offenders.

The Court finds this argument compelling. The legislature amended c.93A to encompass securities fraud but clearly limited the petitioner's recovery to actual damages. G.L. c.93A, § 9(3). Permitting a multiple damages claim under c.231, § 85J is statutorily inconsistent and therefore inappropriate.

In this court's view, the holding in that case is, at once, instructive and persuasive. Prior to the amendment in 1987, Chapter 93A did not cover transactions in "securities". In 1987, the legislature added coverage for securities transactions by amending the definitions section [Chapter 93A, § 1(b)] to read, in relevant part—

> "Trade" and "commerce" shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any *property*, tangible or intangible, real,

*personal* or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A ..... (Emphasis added).

If, as plaintiff now suggests, a limited partnership interest, which she claims to be a security for purposes of Count 3 under the Massachusetts Blue Sky laws, is, in fact, personal property, then the amendment would have been merely an exercise in legislative redundancy.[15] Properly construed, it is clear, as concluded by Judge McNaught in *Medlinsky, supra,* the legislature never intended that Section 85J apply to securities transactions, whether those securities be within or without the inventory of the seller. That was precisely the reason for the 1987 amendments to Chapter 93A. This court concludes that the courts of the Commonwealth of Massachusetts would likewise so conclude.[16]

Defendants' Motion for a Directed Verdict is accordingly allowed as to Count 6 of the First Amended Complaint.

D. In all other respects, Defendants' Motion for a Directed Verdict is denied.

---

(D.Mass.) (Alexander, M.J.). The only matter addressed in that decision was the requirement of pleading fraud with particularity within the meaning of Rule 9(b), F.R.Civ.P.—again nothing more, and nothing less.

**13.** As a result of earlier holdings by the Massachusetts Supreme Judicial Court that Chapter 93A did *not* apply to securities transactions.

**14.** Under Chapter 93A, Section 9(3), as amended, it is provided that—

Notwithstanding any other provision to the contrary, if the court finds any method, act or practice unlawful with regard to any security ... defined in Section two [which, in turn, indicates that the term "security" is that given to it by Section 401(k) of Chapter 110A, *see* footnote 9, *supra*], and if the court finds for the petitioner, recovery shall be in the amount of *actual* damages. (Emphasis added).

**15.** Plaintiff's amended complaint (Count 9) included a claim under Chapter 93A. When defendants filed their motion to dismiss, plaintiff conceded (Plaintiff's Partial Opposition to De-

fendants' Motion to Dismiss the Complaint (# 38)) the point by not opposing that motion to dismiss insofar as it addressed the Chapter 93A claim. That concession was made, quite apparently, because the conduct about which she complains occurred in 1986, prior to the 1987 amendments to Chapter 93A.

If, however, as plaintiff now says, the *sale* of limited partnerships is functionally equivalent to the *sale* of *personal property,* plaintiff's earlier concession is baffling, since Chapter 93A, even prior to the 1987 amendments, always proscribed unfair and deceptive practices in the *sale* or offering for *sale* of *personal property.*

**16.** Plaintiff did not request certification of the question to the Massachusetts Supreme Judicial Court. And even had plaintiff requested certification, that request would have been denied, given the fact that plaintiff, who invoked the diversity jurisdiction of this court on her state law claims, was and is in a peculiarly poor position to seek certification. *See Venezia v. Miller Brewing Co.,* 626 F.2d 188, 192 (1st Cir. 1980).