**Ervin G. FROID, Plaintiff,**

v.

**T. Roland BERNER, Charles E. Ehinger, Richard P. Sprigle, and Curtiss-Wright Corp., Defendants.**

**Civ. A. No. 86–2068.**

United States District Court, D. New Jersey.

Dec. 19, 1986.

Miller & Galdieri, Jersey City, N.J., Wolf Popper Ross Wolf & Jones, New York City, for plaintiff.

Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., Patterson, Belknap, Webb & Tyler, New York City, for defendants.

## OPINION

SAROKIN, District Judge.

In this insider trading action, defendants move to dismiss the complaint or, in the alternative, for summary judgment.

■ The summary judgment motion requires the court to determine whether plaintiff is entitled to discovery. Absent discovery he cannot refute the factual assertions of defendants which, in essence, deny plaintiff's allegations of insider trading. On the one hand, to deny discovery deprives plaintiff of the opportunity of challenging the facts tendered by defendants in support of their motion. It must be conceded that by their very nature most facts which would support plaintiff's claims of insider trading are primarily within the possession of the defendants.

On the other hand, the court must recognize that discovery in a case of this nature has a life of its own totally apart from the ultimate facts which it may disclose. The mere prospect of discovery of high ranking corporate executives or board members confers substantial leverage upon the plaintiff. Therefore, the court should be hesitant to allow such free-wheeling discovery absent a sufficient threshold showing by plaintiff that he is entitled to it.

■ It is not sufficient for plaintiff to merely contend that defendants' affidavits may be untruthful—if that were the sole basis to defeat a motion for summary judgment, then none would ever be granted. In order for plaintiff to be entitled to proceed with discovery, he must present sufficient information to cast doubt upon defendants' factual assertions. Mere suspicion and conjecture are not enough. The court must make certain that the tools of discovery are utilized to dig for the truth rather than be used to bury the defendants.

The court thus proceeds to determine which of those purposes will be served in this matter.

### I. *Defendants' Motion to Dismiss under Rule 12(b)(6)*

#### A. *Background*

For the purposes of defendants' motion to dismiss, the court accepts as true the following allegations contained in plaintiff's complaint.

Until November 1985, defendant Curtiss-Wright Corp. was the largest stockholder of Western Union, owning 18.4% of the outstanding common stock. (Par. 8) Defendants T. Roland Berner, Charles E. Ehinger, and Richard P. Sprigle, were, at all times relevant, officers of Curtiss-Wright. These individuals also were directors of Western Union, functioning as Curtiss-Wright's designees to Western Union's Board of Directors. (Pars. 3–6).

Western Union had experienced large losses in recent years. (Par. 10) On May 17, 1985, however, Western Union's chairman announced that the company would be operating at a profit by the end of 1985. (Par. 11; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or for Summary Judgment, at 2.) In September, 1985, Western Union reported

that its 1985 losses were expected to be smaller than their 1984 losses. (Par. 12)

In fact, however, during December, 1985, the three individual defendants knew or had reason to believe that Western Union would realize substantially larger losses in 1985 than it had realized in 1984, and that Western Union's optimistic predictions were unlikely to come true. The defendants possessed this information by virtue of their access to Western Union's oral and written internal reports of earnings and income. (Par. 14)

On December 9, 18, and 19, 1985, Curtiss-Wright sold its Western Union stock on the open market at approximately $13 per share. (Par. 16–17)[1] Curtiss-Wright did not disclose to the investing public the information concerning the true extent of Western Union's financial deterioration. (Par. 18).

Plaintiff Ervin G. Froid purchased Western Union stock on December 18, 1985. (Par. 2; Plaintiff's Brief in Opposition, at 14) If plaintiff would have known of the withholding of information by the defendants, plaintiff would not have purchased Western Union stock at all, or would have purchased at a lower price. (Par. 20) The price paid by plaintiff was inflated because it did not reflect Western Union's true financial position. (Par. 21)

In February 1986, Western Union announced that it expected to report a net loss of about $370 million for fiscal year 1985, compared to a $58.4 million net loss in fiscal 1984. (Par. 13)

In May 1986, Western Union stock was trading at $5.88 per share. (Par. 19).

On May 28, 1986, plaintiff filed a complaint alleging that defendants Berner, Ehinger, Sprigle, and Curtiss-Wright Corp. violated Section 10(b) of the Securities Exchange Act of 1934, Rule 10b–5, 17 C.F.R. 240–10b–5, and committed common law fraud. The complaint is filed as a class action on behalf of "all persons who purchased the common stock of Western, Union in the open market from November 10, 1985, until at least February 10, 1986 inclusive, and who have suffered damages as a result of the acts and transactions complained of herein." (Par. 9(b)).

### B. *Discussion*

■ Generally speaking, a Rule 10b–5 plaintiff must establish the following elements: a false representation or omission of a material fact; defendants' intent or recklessness ("scienter"); the plaintiff's reasonable reliance thereon; and his resultant loss. *See Peil v. Speiser*, 806 F.2d 1154, 1160 (3d Cir.1986). Defendants do not contend that the complaint fails to allege an omission of fact; they argue that the complaint is defective with regard to each of the other elements.[2]

#### 1. *Materiality*

Defendants contend that plaintiff has failed to allege that the information that was withheld was material. Under the federal securities statutes, materiality is de-

---

**1.** The complaint incorrectly states that some of the stock was sold on November 10, 1985. Defendants brief and supporting affidavits supply the proper dates.

**2.** Defendants make two additional arguments. First, defendants point out that Rule 10b–5 confers standing only on those investors trading contemporaneously with the insider. *See Wilson v. Comtech Telecommunications*, 648 F.2d 88, 94 (2d Cir.1981). Although plaintiff's complaint alleges that plaintiff purchased Western Union stock between November 10, 1985 and February 10, 1986, plaintiff's current brief indicates that plaintiff's purchase took place on December 18, 1985. Plaintiff's purchase, then, is unquestionably contemporaneous with defend-

ants' December 9, 18, and 19 sales. Plaintiff has standing to sue under Rule 10b–5.

Second, defendants state properly that they can be held liable under Rule 10b–5 for nondisclosure only if they had a duty to disclose. Plaintiffs need not allege that defendants, as controlling shareholders or directors of Western Union had a general duty to disclose inside information. Defendants, as insiders, had a duty under Section 10(b) and Rule 10b–5 to disclose material information upon trading in Western Union stock. Assuming arguendo that the inside information concerning the true condition of Western Union was material, plaintiffs have adequately alleged facts creating a duty to disclose upon the defendants.

fined as "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Industries v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (interpreting Rule 14a–9 concerning proxy voting); *see Healey v. Catalyst Recovery of Pennsylvania, Inc.*, 616 F.2d 641, 647 (3d Cir.1980) (applying this definition under Rule 10b–5).

Paragraph 14 alleges that the information withheld was "oral and written projections of earnings and income" concerning (a) the fact that Western Union would have substantially larger losses than the year before, contrary to previous reports, and (b) that Western Union's prior optimistic predictions would not be realized. Paragraph 15 alleges that defendants knew that these projections were material.

The Third Circuit has set forth more specific guidelines for determining the materiality of "soft information" such as income projections.

> Courts should ascertain the duty to disclose asset valuations and other soft information on a case by case basis, by weighing the potential aid such information will give a shareholder against the potential harm, such as undue reliance, if the information is released with a proper cautionary note.

*Flynn v. Bass Bros. Enterprises, Inc.*, 744 F.2d 978, 988 (3d Cir.1984). The court listed several factors upon which such a determination must be based.[3] The court cannot engage in such a fact-specific inquiry on the pleadings. For the purposes of the 12(b)(6) motion, plaintiff has adequately pleaded materiality.

### 2. *Scienter*

An essential element of a Rule 10b–5 action is the defendants' scienter—the defendant must have acted with "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Third Circuit has interpreted *Ernst* to require either intent or recklessness by the defendant: "a conscious deception or ... a misrepresentation so recklessly made that the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception." *McLean v. Alexander*, 599 F.2d 1190, 1197 (3d Cir. 1979).

Plaintiff alleges that defendants "knew or had reason to believe" that Western Union's optimistic predictions would not be realized. Complaint, Par. 14. Defendants argue that this pleading alleges negligence in the alternative and is thus deficient. Defendant is correct that plaintiff must prove more than negligence to prevail in this 10b–5 suit. The court holds, nonetheless, that this disjunctive pleading is sufficient to survive a 12(b)(6) motion to dismiss. *See Zuckerman v. Franz*, 573 F.Supp. 351, 357 (S.D.Fla.1983); *Xaphes v. Shearson, Hayden, Stone, Inc.*, 508 F.Supp. 882, 887 (S.D.Fla.1981).

### 3. *Reliance*

The Third Circuit has recently addressed the reliance requirement in the context of alleged misrepresentations by insiders affecting the price paid by a purchasing plaintiff.[4]

> [W]e hold that plaintiffs who purchase in a open and developed market need not prove direct reliance on defendants' misrepresentations, but can satisfy their burden of proof on the element of causation by showing that the defendants made material misrepresentations. If plaintiffs make such a showing, the court will presume that the misrepresentations occasioned an increase in the stock's val-

---

**3.** The factors listed are: the facts upon which the information was based; the qualifications of those who prepared or compiled it; the purpose for which the information was originally intended; its relevance to stockholders' impending decision; the degree of subjectivity or bias reflected in its preparation; the degree to which the information is unique; and the availability to the investor of other more reliable sources of information. *Flynn,* 744 F.2d at 988.

**4.** The court finds no distinction, in this context, between misrepresentation and the material omissions alleged in this complaint.

ue that, in turn, induced the plaintiffs to purchase the stock. *Peil v. Speiser,* 806 F.2d 1154, 1161 (3d Cir.1986). Given the court's finding that plaintiff has adequately pled that the omissions were of material facts, the court must find that plaintiff's has adequately pled reliance on the omissions.

### 4. *Causation of loss*

■ Defendants argue that plaintiff has failed to allege "loss causation"—that the misrepresentation relates to the reasons for the investment's decline in value. *See, e.g., Nutis v. Penn Merchandising Corp.,* 615 F.Supp. 486 (E.D.Pa.1985). Recovery under Rule 10b–5 is not permitted if an intervening cause was responsible for the plaintiff's economic loss. *See id.* at 486.

■ Plaintiff alleges, in Paragraph 21, that plaintiff paid an inflated price for its Western Union shares because Western Union's true financial position was not known; Curtiss-Wright, at the same time, was receiving an inflated price on sale of its stock. Paragraph 20 alleges that if Western Union's true condition was known, plaintiff would not have purchased stock or would have done so at a lower price. Plaintiff is entitled to recover his "out-of-pocket" damages, that is the difference between the price paid and the "value" of the stock when purchased. *See Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 168 (2d Cir.1980). Although plaintiff has not specified the figures involved, so that calculation of exact economic loss at this time is not possible, plaintiff's allegations are sufficient to survive defendant's motion to dismiss.

The court, then, denies defendants' motion to dismiss the complaint.

### II. *Summary Judgment*

Rule 56(c) places an initial burden on a party moving for summary judgment to demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The chief factual issue underlying any Rule 10b–5 insider trading action is whether the defendants possessed inside information. Paragraph 14 of plaintiff's complaint alleges that the three individual defendants were privy to Western Union's "oral and written internal reports and projections of earnings and income" that contradicted Western Union's previous optimistic predictions.

Defendants' affidavits in support of this motion set forth certain pertinent additional facts that are uncontested by the plaintiff. Plaintiff correctly alleges that on February 10, 1986, Western Union announced a $370 million net loss for 1985. This is substantially greater than the $58.4 million loss for 1984. Western Union's press release of February 10, however, indicates that approximately $300 million of this loss was due to special charges, "primarily for the write-down of older generation switching and transmission equipment." See Exhibit FF attached to affidavit of Harold R. Tyler. Once this accounting measure is considered, Western Union experienced operating losses in 1985 of approximately $70 million, not much greater than the $58.4 million loss of 1984.

The affidavits of the individual defendants state unequivocally that none of them had possessed any knowledge inconsistent with Western Union's public statement in September 1985 that its 1985 losses would be smaller than in 1984. The affidavit of T. Roland Berner fully details the information concerning 1985 losses that the Curtiss-Wright designees to the Board received. At a July 1985 meeting of the Western Union Board of Directors, a projection of a $14.2 million loss for 1985 was presented. Berner affidavit, Par. 45. In August 1985, the Curtiss-Wright designees received a projection of a $36.2 million loss for 1985, and a prediction of profitability for 1986. Berner affidavit, Par. 46. A financial report for the nine months ending September 30, 1985, was presented at a Board meeting on October 22, 1985. The report stated a net loss of $31.5 million for this period. Berner affidavit, Par. 47. (This information was issued in an October

24 press release. See Exh. U attached to Berner affidavit.) A financial report for the ten months preceding October 30, 1985, was presented at a Board meeting on November 26, 1985. The report showed a net loss of $30.9 million for the ten months, reflecting an $0.6 million profit for October. At that meeting, a forecast was circulated predicting a 1985 loss of $44 million and $22 million in net income for 1986. Berner affidavit, Par. 49. Furthermore, all of the defendants state that they were never informed of Western Union's intention to write down equipment or record any other special charges to earnings in 1985. See Berner affidavit, Par. 52; Ehinger affidavit, Par. 15; Sprigle affidavit, Par. 11.

Plaintiff argues that Mr. Berner's affidavit itself raises a genuine issue of material fact as to the extent of Mr. Berner's knowledge. Mr. Berner states that during 1985 the chairman of Western Union denied him access to key operating executives and "kept information" from him that was disclosed to other Board members. Berner affidavit, Par. 17. Plaintiff states that other portions of the Berner affidavit contradict this statement, thus raising a triable issue of fact.

Assuming arguendo that a triable issue of fact exists as to whether Western Union denied certain access to information to Mr. Berner, the court concludes that such an issue is not material. Mr. Berner's statements concerning denial of access to personnel and information were made to support defendants' argument as to lack of scienter—defendants claim that this was one of the reasons for their sale of Western Union stock. Arguably, a factfinder could conclude that Western Union was willing to give such access to Mr. Berner, but not that they *gave* it or that he obtained more information than he states. Such an inference would require the factfinder to disregard the defendants' statements detailing the consistent information which they were given, as well as defendants' statements that such information was all they received. Defendants' affidavits, when examined on the whole, raise no genuine issues of material fact.

■ Defendants' affidavits, standing alone, show that defendants did not possess any inside information that would have contradicted Western Union's public statements. Defendants, then, have met their initial burden under Rule 56(c) of demonstrating that they are entitled to judgment as a matter of law.

When the party moving for summary judgment meets its burden under Rule 56(c), the nonmoving party may oppose the motion in two ways: 1) under Rule 56(e), by setting forth "specific facts showing that there is a genuine issue for trial," or 2) under Rule 56(f), by showing that discovery is "essential to justify his opposition."

■ Rule 56(e) requires a party to do more than merely rest on its pleadings; the opponent of a summary judgment motion must do more than raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, — U.S. —, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A genuine issue for trial exists only when the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

■ Plaintiff submits only his brief in opposition to defendants' motion. To counter defendants' showing that they possessed no information contradicting Western Union's public statements, plaintiff sets forth two "specific facts"—Western Union's February 1986 announcement of $370 million losses, and defendants' status as Western Union directors until December 1985. Plaintiff deduces, from the fact of the announcement, that internal projections of the loss *must* have existed prior to December 1985. Plaintiff deduces next, from the fact of defendants' positions as directors, that defendants *must* have been privy to such projections. Plaintiff sets forth no other facts to support the allegation that contradictory information existed prior to December 1985, or the allegation that defendants possessed such information. Plaintiff's speculative inferences are insufficient to raise a genuine issue of ma-

terial fact in the face of defendants' detailed submissions.

A rational fact-finder, viewing the record as a whole, could not find that defendants possessed any inside information indicating that Western Union's projections were erroneous; plaintiff, then, has not met his burden under Rule 56(e). *See Matsushita Elec. Indus. Co. v. Zenith Radio,* —— U.S. ——, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Plaintiff is left, then, with his contention that defendants' motion must be denied because discovery is necessary for his opposition. Here lies the heart of this motion. At oral argument, plaintiff's counsel admitted that, if pressed, his sole opposition to defendants' motion was that discovery was necessary.

The federal rules clearly contemplate that discovery play a role in summary judgment motions. Rule 56(c) permits a summary judgment motion to be supported by "depositions, answers to interrogatories, and admissions on file." *See Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (stating that Rule 56(c) contemplates adequate time for discovery). Rule 56, however, does not require discovery. Rule 56(a) permits a party to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action." A party who can properly support his motion without use of discovery is entitled to summary judgment. *See American Nurses' Ass'n v. State of Illinois,* 783 F.2d 716, 729 (7th Cir.1986); *United States v. Light,* 766 F.2d 394, 397 (8th Cir.1985).

The non-moving party, though, may oppose such a motion under Rule 56(f) on the grounds that discovery is required before the party can oppose the motion effectively. Rule 56(f) states:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken of discovery to be had or may make such other order as is just.

Plaintiff filed his Rule 56(f) affidavit, explaining why discovery is essential to his opposition, on the day of oral argument. The affidavit in relevant part states:

The defendants, Western Union and their officers or directors are in possession of documents and other information concerning defendants' state of mind at the time Curtiss-Wright sold its holdings of Western Union common stock on December 10 and December 18, 1985. Relevant to defendants' state of mind are, among other things, the following: the circumstances under which Curtiss-Wright sold its Western Union stock including what defendants knew about Western Union's financial condition, the reasons for such sale, and defendants' motives for selling.

 Plaintiff's affidavit fails to convince the court that defendants' motion should be denied so that discovery could be had. First, the discovery sought must be relevant to the plaintiff's ability to rebut the specific issue upon which summary judgment is sought. *See United States v. Light,* 766 F.2d 394, 397–98 (8th Cir.1985); *see also United States v. $5,644,540.00,* 799 F.2d 1357, 1362 (9th Cir.1986); *Powers v. McGuigan,* 769 F.2d 72, 76 (2d Cir.1985) (both dealing with the showing needed for a continuance under Rule 56(f)). Plaintiff must rebut defendants' showing that they possessed no contradictory inside information; to the extent that plaintiff seeks discovery as to defendants' reasons for sale and motives for selling, plaintiff's request for discovery is irrelevant to its opposition. Second, plaintiff claims to require discovery as to the extent of defendants' knowledge of Western Union's financial condition at the time of sale. Defendants' affidavits, however, set out in detail the extent of such knowledge. Plaintiff presents the court with no good reason to believe that discovery will turn up anything further. Plaintiff hypothesizes that defendants must be lying because plaintiff postulates that there must be more infor-

mation and defendants must have known of it. As described above, plaintiff's deductive reasoning is supported by no facts other than Western Union's announcement of $370 million losses and defendants' position as Western Union directors. Rule 56(f) does not permit the court to be moved by such speculation.

It is true that Rule 56(f) also authorizes the court in appropriate cases to refuse to enter summary judgment where the pary opposing the motion shows a legitimate basis for his inability to present by affidavit facts essential to justify his opposition; but to take advantage of this provision he must state by affidavit the reasons for his inability to do so and these reasons must be genuine and convincing to the court rather than merely colorable. It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts. In the world of speculation such doubts have an honored place, but in the daily affairs of mankind and the intensely practical business of litigation they are put aside as conjectural.

*Mid-South Grizzlies v. National Football League*, 720 F.2d 772, 779–80 (3d Cir.1983) (quoting *Robin Construc. Co. v. United States*, 345 F.2d 610, 614 (3d Cir.1965)), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984).

The court, then, grants defendants' motion for summary judgment as to plaintiff's federal law claims.

### III. *Common Law Fraud*

The court, having granted summary judgment against plaintiff on his federal claims, dismisses plaintiff's pendent state law claim for lack of subject matter jurisdiction. In pendent jurisdiction cases, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir.1976) (stating that if the federal claim can be disposed of on summary judgment, "the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances.")

CONCLUSION

In essence, plaintiff argues that defendants "must" have had insider information by reason of their positions and actions. But before defendants should be subjected to such serious charges of fraud and misconduct and discovery to investigate those claims, plaintiff is required to present more than mere suspicion. In the face of defendants' detailed factual presentations refuting plaintiff's charges, defendants should not be required to suffer the time and expense of depositions and document production, unless plaintiff comes forward with more than unsupported supposition. Discovery is an awesome weapon; it should be used to seek the truth, not to coerce settlements.

The court denies defendants' motion under Rule 12(b)(6) to dismiss plaintiff's complaint. The court grants defendants' motion for summary judgment as to plaintiff's Rule 10b–5 claim. The court dismisses plaintiff's pendent common law fraud claims for lack of subject matter jurisdiction.