RELIANCE INSURANCE COMPANY, **Reliance Capital Group, L.P., Reliance Capital Group, Inc., Drexel Reliance Capital Group Partnership, George E. Bello, Lowell C. Freiberg, Henry R. Silverman, Howard E. Steinberg, and Michael J. Blake, Plaintiffs,**

v.

**EISNER & LUBIN, Defendant.**

Civ. A. No. 86–1775.

United States District Court,
D. New Jersey.

May 24, 1988.

---

Russel H. Beattie, Jr., New York City, for plaintiffs.

Alvin M. Stein, Parker, Chapin, Flattau & Klimpl, New York City, for defendant.

## OPINION

WOLIN, District Judge.

### I. JURISDICTION.

In their amended complaint, plaintiffs allege that defendant has violated the anti-fraud provisions of the securities laws of the United States, the Racketeer Influenced and Corrupt Organizations Act ("RICO") of the United States and the common law of the State of New Jersey. Specifically, plaintiffs allege that this court has federal question jurisdiction under 28 U.S.C. § 1331 pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; Section 4 of RICO, 18 U.S.C. § 1964 and principles of pendent jurisdiction.

### II. RELIEF.

Defendant moves (i) for summary judgment in its favor with respect to the amended complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R.Civ.P."), or (ii) for summary judgment in its favor with respect to the federal securities and RICO counts of the amended complaint and thereafter, pursuant to Fed.R. Civ.P. 12(b), for dismissal of the state common law counts for lack of subject matter jurisdiction, or in the alternative, (iii) pursuant to Fed.R.Civ.P. 12(c), for judgment on

the pleadings with respect to the RICO count.

### III. FACTS.

Defendant, Eisner & Lubin, an accounting firm, performed auditing services for Supermarket Services, Inc. ("SSI")[1] and its subsidiary, Jakwel Sales Corporation ("Jakwel") for the years 1981–1984, inclusive.

In connection with its audit activities, Eisner & Lubin audited and subsequently issued reports on certain financial statements[2] of SSI and Jakwel for the fiscal years ended March 27, 1982, March 26, 1983 and March 31, 1984.[3] Each of these reports was accompanied by an opinion signed by Eisner & Lubin which stated that the information contained therein was fairly represented in all material respects. Eisner & Lubin certified these reports without qualification.

In December of 1983, plaintiffs[4] and SSI executed a stock purchase agreement and a note purchase agreement, each dated as of December 7, 1983, whereby $6.6 million was invested in SSI in exchange for certain stock and promissory notes of SSI. Thereafter, in 1984, SSI negotiated the purchase of the Ross–Viking Merchandise Corporation for a purchase price of roughly $6.8 million in cash and notes and $1 million in SSI stock. As part of this transaction, which was consummated on December 31, 1984, the Reliance Investors executed an Intercreditor and Subordination Agreement (the "Subordination Agreement") which, among other things, subordinated SSI's indebtedness held by the Reliance Investors to that of SSI's newly incurred indebtedness held by General Electric Credit Corporation ("GECC").

For SSI's 1985 audit, Eisner & Lubin was succeeded by the accounting firm of Touche Ross & Co. ("Touche Ross"). After commencing its audit for the fiscal year ending March 31, 1985, Touche Ross withdrew its services and it did not certify the 1985 SSI financial statements.

On or about November 29, 1985, SSI filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code.[5] In 1986, the accounting firm of Rose, Feldman, Radin, Feisod & Skehan issued a report based on a compilation of the financial statements of SSI on behalf of the SSI Trustee in Bankruptcy in which it was estimated that the book value of SSI inventory had been overstated by $15 million.

Plaintiffs filed their original complaint in 1986, followed by an amended complaint in 1987, in which they claim violations of federal securities laws, RICO and common law. The gravamen of plaintiffs' complaint is that Eisner & Lubin provided plaintiffs with financial reports which were allegedly the basis upon which plaintiffs relied, and by which they were subsequently induced, to purchase SSI stock and notes in 1983 and also to subordinate their SSI debt to GECC in 1984. At the heart of the complaint is the allegation that Eisner & Lubin performed its annual audits and interim reviews of SSI in either a knowingly or

---

1. SSI is a privately held Delaware corporation with offices in Linden, New Jersey, and it is engaged in the business of distributing general merchandise and health and beauty aids to retailers such as supermarkets, discount department stores and drug stores throughout the East Coast.

2. The financial statements included the consolidated balance sheets, consolidated statements of operations and retained earnings and changes in financial position, and the consolidated supplemental statements of operations for SSI and Jakwel.

3. Eisner & Lubin also performed a review of the interim consolidated balance sheets and interim consolidated income statements of SSI and Jakwel as of September 24, 1983.

4. The named plaintiffs include: Reliance Insurance Company, Reliance Capital Group, L.P., Reliance Capital Group, Inc., Drexel Reliance Capital Group Partnership, George E. Bello, Lowell C. Freiberg, Henry Silverman, Howard E. Steinberg and Michael J. Blake (collectively, the "Reliance Investors").

5. SSI is not named as a defendant to this action because during the pendency of its reorganization proceedings under Chapter 11, it is accorded the protections of the bankruptcy law's automatic stay and post-confirmation injunction provisions.

recklessly fraudulent manner,[6] thus overstating SSI's annual earnings.[7] Plaintiffs aver that if they had been supplied with a more accurate picture of the financial state of SSI in 1983, they would not have purchased SSI's stock.

Defendant now responds with a motion for summary judgment as noted *supra* in Part II of this opinion.

## IV. ANALYSIS.

As a threshold matter, "Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled a judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Moreover, when as in the instant case defendant has supplemented its summary judgment motion with affidavits, depositions and interrogatories, plaintiff's opposition, in order to survive defendant's motion for summary judgment, "must set forth specific facts showing that there is a genuine issue for trial. If [they] [do] not so respond, summary judgment, if appropriate, shall be entered against [them]." Fed.R.Civ.P. 56(c). The Supreme Court further clarified the requirements of Rule 56(c) in *Celotex Corp. v. Catrett:*

Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"

477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), citing Fed.R.Civ.P. 56(e). A plaintiff does not meet this standard when he "fails to establish the existence of an element essential to [plaintiff's] case, and on which plaintiff will bear the burden of proof at trial. *Id.*[8]

In other words, this court may grant summary judgment only if, "as a matter of law, viewing all the evidence which has been tendered and which should be admitted in the light most favorable to the [nonmovant], no jury could decide in [the movant's] favor." *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358 (3d Cir.1987), the Third Circuit stated:

"At the summary judgment stage, 'the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' [Citation omitted.] However, if the evidence is 'merely colorable' or is 'not significantly probative,' summary judgment may be granted. [Citation omitted.]"

*Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144, citing, *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511.

---

6. Specifically, plaintiffs allege, in part, that Eisner & Lubin was, at minimum, reckless in failing to notice and account for certain questionable inventory practices of SSI, including (i) alteration of records, (ii) overestimation of the quantity of returned inventory, and (iii) calculation of too small a discount factor from retail with regard to estimating the value of returned inventory. *See, e.g.,* Amended Complaint at ¶¶ 54, 57 and 59.

7. Plaintiffs allege, that despite its claimed annual earnings, SSI was actually running at a loss during at least some of the years in question.

8. It should be noted that defendant asserts plaintiffs have completely failed to meet their burden of production under Rule 56(e) by relying on an affidavit based on mere speculation and opinion, an argument which attacks the admissibility and not the weight of plaintiffs'

proffered evidence. *See, e.g., Evers v. General Motors Corp.,* 770 F.2d 984 (11th Cir.1985), in which the court noted that Rule 703 of the Federal Rules of Evidence, which permits experts to testify based on inadmissible evidence, "do[es] not alter the requirement of Fed.R.Civ.P. 56(e) that an affidavit must set forth facts in order to have any probative value." *Id.* at 986. The *Evers* court also noted that "Rule 703 'was intended to broaden the acceptable bases of expert opinion, but it was not intended to make summary judgment impossible whenever a party has produced an expert to support its position.'" *Id.* (citation omitted). *But see Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553–54 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

Because "the substantive law will identify which facts are material," *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510, in order to rule on defendant's motion for summary judgment, this court must now analyze the sufficiency of each of plaintiffs' substantive allegations.

### A. The Securities Count

First, it should be noted that the Supreme Court has expressly acknowledged that a private right of action exists under Rule 10b–5 for purchasers and sellers of securities. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (noting that this cause of action is limited to those who actually bought or sold securities as the result of fraud). In the instant action, plaintiffs allege two separate claims of securities fraud under Section 10(b) of the Securities Exchange Act of 1934[9] and SEC Rule 10b–5 promulgated thereunder.[10] The first violation allegedly occurred when plaintiffs purchased SSI stock and notes in 1983 (the "1983 stock purchase") in reliance on certain of Eisner & Lubin's certified financial statements of SSI for its 1982 and 1983 fiscal years, including certain of SSI's interim financial statements. The second violation allegedly occurred when plaintiffs subordinated their SSI debt in 1984 (the "1984 debt subordination") in reliance on both the Eisner & Lubin certified financials of SSI for fiscal year 1984 and certain other letters from Eisner & Lubin to plaintiffs.

■ The requisite elements of a Rule 10b–5 securities fraud claim are: (1) a material misrepresentation or omission (2) made in connection with the purchase or sale of a security (3) upon which the purchaser or seller reasonably relied (4) which causes a loss, and (5) scienter on the part of the person who made the misrepresentations. *See Peil v. Speiser*, 806 F.2d 1154 (3d Cir.1986); *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939 (3d Cir.1985), *cert. denied*, 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985).

■ *1. The 1983 Stock Purchase.* With respect to the 1983 purchase of stock and notes, only two of the above-listed five elements of a 10b–5 claim are presently before this court as the subject of defendant's motion for summary judgment. Defendant claims that plaintiffs have established no issue of material fact with respect to both the materiality of the alleged misrepresentation and the existence of defendant's scienter.

Defendant's motion is supported by the comprehensive affidavit of Arthur Nowak, an Eisner & Lubin accountant, in which the assertions of plaintiffs' amended complaint are firmly rebutted.[11] As a result, defend-

---

9. Section 10(b) of the Securities Exchange Act provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce of the mails, or of any facility of any national securities exchange—
>
> \* \* \* \* \* \*
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1982).

10. Rule 10b–5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of

the mails, or of any facility of any national securities exchange,

> (a) to employ any device, scheme, or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.106–5 (1984).

11. For example, the Nowak affidavit states that the Shiff affidavit "does little more than criticize certain aspects of Eisner & Lubin's workpapers." *See* Nowak aff. at ¶ 5. More specifically, Nowak asserts that the Shiff affidavit does not offer any factual proof as to (i) the actual value of the allegedly overstated inventory, or (ii) the basis of the error in SSI's inventory discount

ant argues that plaintiffs' evidence cannot withstand even the most lenient application of the *Liberty Lobby* standard of summary judgment because "[b]y its terms, this standard provides that the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* 477 U.S. at 247, 106 S.Ct. at 2510.

Although the standard for summary judgment as enunciated in *Liberty Lobby* is easy to articulate, its application by district courts to a Rule 10b–5 claim is fraught with complexity. *See, e.g., Liberty Lobby,* 477 U.S. at 258, 106 S.Ct. at 2515 (Brennan, J. dissenting) ("I am unable to divine from the Court's opinion *how* these evidentiary standards are to be considered, or what a trial judge is supposed to do in ruling on a motion for summary judgment.") (emphasis in original). Recently, this district has interpreted the summary judgment standard thus:

> Rule 56(e) requires a party to do more than merely rest on its pleadings; the opponent of a summary judgment motion must do more than raise 'some metaphysical doubt' as to the material facts.

*Froid v. Berner,* 649 F.Supp. 1418, 1424 (D.N.J.1986) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). As in *Froid,* this court must carefully examine plaintiffs' evidence in light of the elements of materiality and scienter to determine whether they have here stated an actionable securities fraud claim.[12]

*(a) Material Misrepresentation.* The standard for material misrepresentation in a Rule 10b–5 claim has been set forth by the Supreme Court in *TSC Industries v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Plaintiffs must show "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable [investor]." *Id.* at 439, 96 S.Ct. at 2132. *See also Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641, 647 (3d Cir.1980) (*TSC* "materiality" test geared toward plaintiff's decisionmaking process). Thus plaintiffs must show that the alleged misrepresentations in SSI's certified financials, had they been disclosed, would have entered into plaintiffs' investment decision.

To rebut defendant's summary judgment motion, plaintiffs rely primarily on the affidavit of Touche Ross accountant Joel H. Shiff (the "Shiff aff.") in which he makes a series of allegations as to Eisner & Lubin's auditing practices with regard to the years in question. Basically, Shiff asserts that the Eisner & Lubin certified financials overstate the value of SSI with respect to inventory, total assets and net earnings for the years 1982–1984, inclusive. *See* Shiff aff. at ¶ 14. In and of itself, this general allegation of defendant's auditing practices is not enough of a showing of "affirmative evidence in order to defeat [defendant's] properly supported motion for summary judgment." *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514.[13]

The Shiff affidavit also states with particularity, and supports the same with calculations, an estimate of the amount by which the financials in question were overstated. *See* Shiff aff. at ¶¶ 26, 50–52 and accompanying exhibits.[14] Based on these

---

factor. Nowak aff. at ¶¶ 8 and 16. Nowak also states that the Shiff affidavit is patently incorrect with respect to its allegations of Eisner & Lubin's inventory counting procedures. Nowak aff. at ¶¶ 34–39.

**12.** *Froid,* though it deals with the issue of insider trading as opposed to that of accountants' liability, provides a cogent framework within which to analyze the elements of a Rule 10b–5 claim.

**13.** Defendant argues that plaintiff's mere "speculative inferences" are insufficient to raise a genuine issue of material fact. *Froid v. Berner,*

*supra,* 649 F.Supp. at 1424–1425. *Froid,* however, is distinguishable from this case because in *Froid* the "[p]laintiff submit[ted] only his brief in opposition to defendant's motion." *Id.* at 1424.

**14.** Defendant claims that these calculations must not be considered because Mr. Shiff did not have personal knowledge of the facts averred, which defendant claims is a requirement under Fed.R.Civ.P. 56(e). However, if the affidavit is admissible at trial, it is suitable for purposes of Rule 56(e). *See In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d

calculations, Shiff notes that the 1982 and 1983 readjusted financials of SSI indicate the possibility of annual *losses* of $2.1 and $2.2 million respectively. *See* Shiff aff. at ¶¶ 28–31. The Shiff affidavit also asserts that Eisner & Lubin accepted SSI's patently unreasonable valuation of inventory returns which created an overstatement of inventory of roughly $2.7 and $5.3 million in the 1982 and 1983 financials. *See* Shiff aff. at ¶¶ 50 and 51. Thus for purposes of defendant's summary judgment motion, plaintiffs have adequately established a material question of fact as to the materiality element of their Rule 10b–5 claim.

*(b) Scienter.* In *Ernst & Ernst v. Hochfelder*, the Supreme Court ruled that mere negligence was not actionable under Rule 10b–5. 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The Court, however, specifically reserved judgment as to whether recklessness is actionable under Rule 10b–5. 425 U.S. at 194 n. 12, 96 S.Ct. at 1381 n. 12. Subsequently, the Third Circuit acknowledged that Rule 10b–5 actions could be brought based on "misrepresentations so recklessly made that the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception." *Coleco Industries, Inc. v. Berman*, 567 F.2d 569 (3d Cir.1977) (per curiam), *cert. denied*, 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978).

The standard for recklessness was then defined by the Third Circuit in *McLean v. Alexander*, 599 F.2d 1190 (3d Cir.1979). The *McLean* court adopted the definition set forth in the Seventh Circuit:

> [R]eckless conduct may be defined as ... highly unreasonable [conduct] involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and

which presents a danger of misleading buyers or sellers that is known to the defendant or is so obvious that the actor must have been aware of it.

599 F.2d at 1197 (quoting *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977)).[15] The *McLean* court, which similarly faced the question of accountant liability under Rule 10b–5, stressed that a plaintiff need not produce direct evidence of defendant's state of mind; rather, plaintiff may show by circumstantial evidence accounting practices which amount to no more than a "pretend audit," or of an audit report "so flimsy as to lead to the conclusion that there was no genuine belief back of it." 599 F.2d at 1198.

Thus this court now faces the crux of defendant's motion for summary judgment inasmuch as the entire motion hinges upon this court's interpretation of the parties' opposing views as to the adequacy of Eisner & Lubin's inventory audit procedure and practices. Although plaintiffs sharply criticize Eisner & Lubin's workpapers, they are unable to point to even one concrete instance in which an actual inventory overstatement occurred during the years in question.[16] This court must determine whether the accumulated circumstantial evidence compiled in the Shiff affidavit "presents sufficient information to cast doubt upon defendant['s] factual assertions," *Froid*, 649 F.Supp. at 1420, such that a reasonable jury may find that defendant audited SSI in such a way as to disregard the "patently obvious danger" of issuing an unqualified certification. *See Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F.Supp. 1314, 1353 (S.D.N.Y. 1982) (citations omitted) (whether issuance

238, 275–278 (3d Cir.1983) (Fed.R.Evid. 703 permits expert opinion evidence based on statements and data produced by others, *rev'd on other grounds, Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir.1975) (opinion evidence particularly appropriate in summary judgment context as to disputed issues of fact).

**15.** In *McLean,* the Third Circuit noted that the recklessness standard of scienter specifically countenances a federal cause of action for accountants' liability cases as is generally recognized at common law under *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931).

**16.** At oral argument plaintiffs' counsel remarked that this was the case because they could not go back and "relive" the audit.

of unqualified opinion was reckless, in light of available information and methodology of audit, is question for jury).

For example, sufficient evidence to establish the recklessness of an audit has been found to exist in the case where direct evidence has been shown with respect to an accountant's admissions of inadequate inventory costing procedures which resulted in inventory overstatements. *See Sirota v. Solitron Devices,* 673 F.2d 566, 573 (2d Cir.1982) (inferring intent from accountant's admissions). In the instant case, unlike *Sirota,* the defendant accounting firm vigorously denies any allegation of impropriety or inadequacy with respect to its auditing procedures. Instead, plaintiffs argue that the analysis of an array of factors (including certain statistical analyses, the rate of inventory turnover, the refusal by successor accountants to certify the annual audit and a sworn assertion that certain inventory values were overstated) is sufficient such that a reasonable jury may infer scienter on the part of defendant.

Despite defendant's point-by-point attack of plaintiffs' assertions, it is not the province of this court at the summary judgment stage to "evaluat[e] the evidentiary underpinnings of these disputes," but rather merely "to categoriz[e] factual disputes in their relation to the legal elements of the claim...." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. In light of the foregoing analysis, this court finds that with regard to the 1983 stock and note purchase, it does not appear beyond doubt that plaintiffs are unable to prove a set of facts that would establish recklessness under their 10b–5 claim.[17]

■ *2. The 1984 Debt Subordination.* With respect to execution of the 1984 Debt Subordination Agreement, this court need

not reach either the issue of materiality nor that of scienter. Instead, this court finds that plaintiffs, as a matter of law, do not have standing under the stringent standard of *Blue Chip Stamps, supra.* In order to bring a Rule 10b–5 action a plaintiff must be an actual "purchaser or seller" of a security. 421 U.S. at 732, 95 S.Ct. at 1924.

In *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187 (3d Cir.1976), the Third Circuit noted that the interpretation of the language, " ' "in connection with the purchase or sale" of any security,' contemplates a causal connection between the alleged fraud and the purchase or sale of stock." *Id.* at 194 (citations omitted). In this case, as in *Tully,* the alleged injury was not "suffered as a result of plaintiffs' actual stock purchase," *id.,* but rather as a result of plaintiffs' compromised position as creditors and shareholders of SSI.[18]

Plaintiffs also argue that, even if they are not technically within the ambit of the purchaser-seller rule, there has been such a "significant change in the nature of the[ir] investment or the[ir] investment risks as to amount to a new investment." *Bull v. American Bank & Trust Co.,* 641 F.Supp. 62, 68 (E.D.Pa.1986). In *Bull,* the court denied summary judgment and allowed plaintiffs to try and show at trial that assignments of cattle maintenance contracts was a fundamental alteration of their investment. *See id.* However, this case is distinguishable from *Bull,* in which the contracts were the "pivot on which investor expectations turned[.]" *Id.* In other words the subordination of plaintiffs' debt in the instant case is not the equivalent of "forcing the plaintiff[s] to exchange their stock for shares representing participation in a substantially different enter-

---

17. For example, in plaintiffs' Shiff affidavit this court finds that certain triable issues of fact arise with respect to defendant's auditing procedures of SSI's inventory practices. *See* Shiff aff. at ¶¶ 14, 15, 22, 24, 36, 50, 70 and 72. *See also supra* note 5.

18. It should be noted that in *Blue Chip Stamps,* the Supreme Court specifically acknowledged that "shareholders, creditors, and perhaps others related to an issuer who suffered loss in the

value of their investment" because of 10b–5 violations are but one of "... [t]hree principal classes of potential plaintiffs ... presently barred by [this purchaser-seller] rule." 421 U.S. at 737–38, 95 S.Ct. at 1926. Moreover, the Court stated that shareholders may circumvent this rule by "bringing a derivative action on behalf of the corporate issuer if the latter is itself a purchaser or seller of securities." 421 U.S. at 738, 95 S.Ct. at 1926.

prise[.]" *Keys v. Wolfe,* 709 F.2d 413 (5th Cir.1983).

Because plaintiffs' debt subordination does not amount to a new investment, nor does it directly involve the purchase or sale of a security, defendant is entitled to dismissal of this part of plaintiffs' Rule 10b–5 claim.

### B. The RICO Count

■ Plaintiffs have also alleged a violation under RICO.[19] "The allegations necessary to support a RICO claim under 18 U.S.C. § 1962... are (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Marshall–Silver Construction Company, Inc. v. Mendel,* 835 F.2d 63, 65 (3d Cir.1987) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)).[20] In *Sedima,* the Supreme Court also noted that even though two acts may be necessary to form a pattern, they may not be sufficient; rather, courts must analyze the "continuity plus relationship" of the alleged acts. 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

Despite the fact that this court has dismissed one of plaintiffs' two Rule 10b–5 claims—the 1984 debt subordination—this is not dispositive of the RICO claim. The Third Circuit has recently noted that "racketeering activity constitutes a pattern only if it is in furtherance of (1) two or more unlawful schemes, or (2) a single open-ended ongoing scheme." *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 38 (3d Cir.1987). In other words, *Barticheck* specifically "rejects the position that a RICO pattern must involve at least two distinct unlawful *schemes.*" 832 F.2d at 39 (emphasis added) (citation omitted).[21] Thus the issue before this court is whether, as a matter of law, a pattern of racketeering activity may be inferred solely from plaintiffs' lone Rule 10b–5 claim stem-

ming from their purchase of SSI stock and notes in 1983.

The Third Circuit has recently provided district courts with guidance as to what constitutes a pattern of racketeering activity under RICO. In *Barticheck, supra,* the court held that an alleged investment fraud scheme which was allegedly carried out by several individuals involving the repetition of similar misrepresentations to more than 20 investors constituted a pattern. 832 F.2d at 38. On the other hand, in *Marshall–Silver, supra,* the court held that a single-victim, single-injury "one-short" scheme involving only two active perpetrators did not amount to a pattern under RICO. 835 F.2d at 65.

Within the spectrum of RICO pattern cases established by *Barticheck* and *Marshall–Silver,* plaintiffs' claim lies somewhere in the middle. The gravamen of plaintiffs' RICO claim is that Eisner & Lubin's certified annual audit reports of SSI for fiscal years ended 1982 and 1983, even though part of a single scheme, are at least two separate predicate acts which create a pattern of racketeering activity sufficient to satisfy the *Sedima* "continuity plus relationship" test as interpreted by *Barticheck.* However, it should be noted that the Third Circuit "decline[d] to adopt a verbal formula for determining when unlawful activity is sufficiently extensive to be 'continuous.' This determination necessarily depends on the circumstances of the particular case." *Marshall–Silver,* at 66 (quoting *Barticheck,* 832 F.2d at 39). Though this court is to undertake a case-by-case analysis, some of the relevant factors for consideration include "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Id.*

---

**19.** Included within the definition of "racketeering activity" under RICO is "fraud in the sale of securities." 18 U.S.C. § 1961(1)(D) (1982).

**20.** The RICO statute states that a "pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5) (1982).

**21.** The *Barticheck* court also rejected the view that racketeering acts committed pursuant to a single scheme can constitute a RICO pattern "only if the scheme is potentially ongoing or open-ended." 832 F.2d at 39.

In applying the essence of the above-quoted analysis to this case, this court finds that plaintiffs' allegations of defendant's activities are insufficient to meet the statutory requirement of a RICO pattern. In *Marshall–Silver* the Third Circuit noted:

> The target of the RICO statute, as its name suggests, is criminal activity that, because of its organization, duration, and objectives poses, or during its existence posed, a threat of a series of injuries over a significant period of time.

835 F.2d at 66. In the case at bar, there was ostensibly a single victim (the Reliance Investors group), a single alleged perpetrator (Eisner & Lubin) and the nature of the activity was essentially a "one-shot" deal (to cause the plaintiffs to invest in SSI).[22] The facts of this case, if not more like those of *Marshall–Silver*, are clearly less like those of *Barticheck*. As a matter of law, therefore, this court is compelled to grant summary judgment in favor of defendant and thereby dismiss with prejudice plaintiffs' RICO claim.

### C. The State Law Counts

Because this court has not dismissed all of plaintiffs' federal law claims, and because the violations alleged under state law arose from the same nucleus of common fact, summary judgment with respect to plaintiffs' pendent state law claims is denied.

### V. CONCLUSION.

With respect to Count 1 of the amended complaint, summary judgment is DENIED as to the 1983 stock and note purchase and it is GRANTED as to the 1984 debt subordination transaction. With respect to Counts 2 and 3, summary judgment is DENIED; and with respect to Count 4, summary judgment is GRANTED.

An order in conformity with this opinion shall be submitted herewith by defendant.

---

**22.** This court rejects the argument that one purpose of defendant's scheme was to perpetuate annual accounting fees by postponing SSI's plunge into bankruptcy.